NO. 8211

COURT OF APPEAL

PARISH OF ORLEANS.

\*\*\*\*\*\*

LOUIS J. BRIGHT

versus

MUTUAL COFFEE COMPANY.

\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*

Court of Appeal
PARISH OF ORLEANS
FILED JAN 30 '27

8211

357

Dinkelspiel; J.

This suit is an action for damages for breach of contract, claiming damages in the sum of $358.31.

Quoting from plaintiff's brief, page 2: "Plaintiff claims the amount in question for a loss upon a resale of two hundred bags of coffee which plaintiff contracted to sell to defendant. It appears that prior to the shipment of this coffee from New Orleans to Montgomery, the defendant undertook to cancel this contract and the plaintiff after notifying the defendant that he refused to acquiesce in this cancellation, resold the coffee for defendant's account and accordingly suffered the loss claimed by this suit.

The contract specified shipment of October 1st (1919) but the coffee was just about to be shipped on October 13th, when defendant undertook to cancel the contract."

The answer, quoting from defendant's brief at page 5, "admitted the making of a contract but averred that on October 2nd, 1919, one Taylor McClellan, of O. P. Holland & Company, the brokers, who had made the sales called on it for shipping instructions and that defendant requested shipments made on the following Tuesday, October 7th. It admitted that instead of shipping the coffee purchased by it in accordance with the contract, plaintiff delayed shipment until October 8th, but denied this delay was in accordance with its request. Defendant admitted that on October 13th, 1919, it wrote plaintiff cancelling the contract but denies that said cancellation was made without any notice or demand to ship coffee, averring that said notice had been given to plaintiff through said brokers; admitted that thereafter plaintiff called on to comply with the contract, refused to do so. Admitted that plaintiff notified it that he would proceed to sell said coffee but denied that plaintiff was entitled to sell said coffee for its account. Defendant further averred that when Mr. McClellan called on October 2nd, 1919 and asked for shipping instructions, it requested that the coffee be shipped on the following Tuesday, October 7th.

358

That not hearing from either plaintiff or Holland & Company, Brokers, by the 11th of October, and not knowing whether plaintiff intended to ship said coffee, it was forced to order coffee elsewhere and on the 13th, still not hearing from either plaintiff or said brokers, it cancelled the contract."

We have thus quoted from both plaintiff's and defendant's briefs in order that there can be no difference so far as the facts are concerned in reference to the final decision of this case on its merits.

We have carefully examined and considered all the evidence, together with telegrams, letters and exhibits filed in this record and the question to be determined from the facts is whether or not defendant violated its contract and whether under the circumstances it was necessary to place plaintiff in default.

The Judge aqua who has given his opinion of the facts in this case in extenso and in writing has found the following facts, in which, in every particular we concur:

"The contract is for a shipment of two hundred bags of coffee on October 1st. It was the duty of the seller to have delivered this coffee to the common carrier, having the most direct and cheapest route to Montgomery, Alabama. The evidence shows, however, that it is usual and customary, I imagine as a matter of courtesy to the purchaser, to inquire from him within a reasonable time, if he has any preference for any route or common carrier, and to accede to his desires in that respect. It is plain from the evidence that at the time of making the contract, and thereafter, the purchaser had no choice of route and relied on his contractor, believing that he would receive the coffee in due course by common carrier, after the first of October. The seller delayed communicating as to choice of routes, until September 30th, on which day he wrote to the broker, who

had negotiated the sale, asking the broker, who no longer had any connection with the transaction, to wire him shipping instructions. This communication should have been sent two or three days previous to September 30th, to say the least, and should have been addressed to the purchaser. Holland & Company, through one of its employees or members of the firm, Taylor McClellan, went to the purchaser on October 2nd, and informed the purchaser that Holland & Company had received a letter from the seller asking for shipping instructions. The evidence convinces me that this was the first that the purchaser knew of the fact that the goods had not been shipped on October 1st, the due date under the contract. The purchaser then and there had the right to cancel, but instead of cancelling, he informed McClellan that if the goods had not already been shipped, that immediate shipment thereof would be inconvenient then, giving the reasons why it would be inconvenient, and stating if the coffee had not been shipped on the first, then, that it would be better, and they would prefer that it be not shipped until the 6th or 7th. According to the testimony of Whitfield, the further statement was made that it must be shipped by that time, otherwise he would be out of coffee and have no supply on hand for his customers. McClellan undertook to convey this message to Holland & Company and either garbled it, or Holland & Company misunderstood the message correctly delivered, for Holland & Company wrote the seller that the purchaser had no choice of route but desired the goods to be shipped after the 8th. As it was the duty of the seller to communicate directly with the buyer, but he saw fit, instead of so doing, to communicate with a third person, who had lost all connection with the transaction, and thereby made this third person his agent both to conveny the message and bring back the reply. If the goods had been shipped on the 9th, even under the erroneous letter, they would have reached the purchaser

in time, but/they were not shipped, and on the 13th had not reached the purchaser, in Montgomery, and they were then, according to instructions, the seller had given, from seven to eight days behind time, and the purchaser cancelled. In the meantime, the price of coffee had gone down and the loss had then accrued, and had to be borne either by the seller, or by the purchaser. The seller had it within his power, by being vigilant, to carry out his contract according to its tenor, and to have thrown this loss on the purchaser. "He was not vigilant. He did not ship the goods at the time he had the right to ship them, and as he slept on his rights, he gave, in my opinion, legal cause for the purchaser to cancel the order. The purchaser availed himself of this right, and threw the loss upon the seller. In my opinion, he was acting within his right. The goods not being shipped either on the 6th or 7th, which was an extension granted after default originally, the seller must stand the consequence.

There will be judgment in favor of the defendant."

Under the facts the next question is what law is applicable, particularly as we consider that the only point really at issue in the case is whether or not there was such a waiver of the delay in shipment as would bar the defendant from cancelling the contract, as he did, without first putting plaintiff in default.

It has been held by our Supreme Court:

"The Code it is true says that putting in default is a prerequisite to the recovery of damages, and of profits and fruits or to the recission of the contract; C. C. 1906; but this rule is modified by the provisions of a subsequent Article, in cases of active violation of contract. The creditor is under no obligation to put the debtor in default, in order to entitle him to his action. C. C. 1928."

Millard vs. Farley, 15 Ann. p. 519.
Also see 119 La. p. 798 et seq. Mennings-Heywood Oil Syndicate vs. Houssiere-Latreille Oil Co.

"C. C. Art. 1912, making, putting in default, prxqu prerequisite to recission of the contract, applies only to contracts whereof time is not of the essence."

Putting in default before recission of the contract as required by Civil Code Art. 1913 is not necessary in suits for recission or for fraud or error or for lesion beyond moiety, or for any other cause of nullity."

139th La. 378, Watson vs. Feibel.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the Court aqua be and the same is hereby affirmed, costs of both Courts to be paid by plaintiff.

--Judgment affirmed--

Claiborne; J. not having heard the argument takes no part.